UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

   Not Present                                                            Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT OF PERMANENT INJUNCTION (Doc. 42)**

Before the Court is Plaintiff United States of America's Motion for Default Judgment of Permanent Injunction against Defendant Sea Nine Associates, Inc. (Mot., Doc. 42.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Accordingly, the hearing set for September 5, 2014, at 2:30 p.m., is VACATED.  For the following reasons, the Court GRANTS the Motion.

**I.   BACKGROUND**

Plaintiff filed the present Motion for Default Judgment of Permanent Injunction on June 23, 2014.  (Doc. 42.)  Because default has been entered in this case against Sea Nine, the factual allegations of the Complaint are deemed to have been admitted by Sea Nine.[1]  Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Sea Nine is a Nevada corporation.  (Complaint, Doc. 1, ¶ 11.)  Sylvia Ross

---

[1] Only allegations relating to the amount of damages are not deemed admitted following a defendant's default.  *Geddes*, 559 F.2d at 560.  Here, however, Plaintiff seeks only injunctive relief.  (Mot. 16:21-24.)

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                      Date:  September 3, 2014

Title:  United States of America v. Kenneth Elliott et al.

Calhoun owns Sea Nine.  (Id.)  Defendant Kenneth Elliott operates and manages Sea Nine as a business concern.  (Id.)  Elliott manages the Voluntary Employee Beneficiary Association ("VEBA") plans that Sea Nine promotes.  (Id. ¶ 35.)

Sea Nine organizes, operates, and promotes a scheme in which it sells to customers owning small, often closely-held companies participation in VEBA plans that falsely purport to meet the definition of a "10 or more employer" plan under I.R.C. § 419A(f)(6).[2]  (Id. ¶ 33.)  Sea Nine claims that customers can, through the contributions their businesses make to the VEBA plans, fund for their employees – typically themselves – a valuable insurance-oriented welfare benefit while claiming all of the VEBA contributions as a federal income tax deduction.  (Id. ¶ 1.)  More than a decade ago, however, the IRS ruled that plans like the VEBAs Sea Nine promotes and operates do not comply with federal tax law.  (Id. ¶ 5.)  Such determinations have been repeatedly upheld by federal courts.  (Id. ¶ 5.)  The result is significant amounts of lost tax revenue to the Treasury based on erroneously claimed tax deductions.  (Id. ¶ 5.)

A typical Sea Nine VEBA plan has several common components.  (*Id.* ¶¶ 36, 37, 38, 40.)  There is a "master plan" document that establishes the responsibilities of the parties to the plan.  (Id. ¶ 36.)  The participating company adopts the master plan through an adoption agreement.  (Id.  ¶ 36.)  Each Sea Nine VEBA plan has a different master plan, with VEBAs distinguished typically by the nature of the participating businesses.  (Id. ¶ 36.)  Nevertheless, the master plans are mostly identical.  (Id. ¶ 36.)  Participating companies are told that they can legally reduce their federal income taxes by deducting the amount of their VEBA plan contributions on their federal income tax returns.  (Id. ¶ 41.)  Those contributions, however, invariably exceed the actual cost of the primary "welfare benefit" claimed to be the aim of the VEBA plans – the death benefit derived from a life insurance policy – for a given year.  (Id. ¶ 41.)  The excess sums are in fact used to fund cash value whole life insurance policies that plan participant beneficiaries

---

[2]  "Ten or more employer" plans are VEBA plans "to which no employer normally contributes more than 10 percent of the total contributions contributed under the plan by all employers."  I.R.C. § 419A(f)(6)(B).  "Ten or more employer" plans may not maintain "experience-rating" arrangements with respect to individual employers.  I.R.C. § 419A(f)(6)(A).  *See* note 4, *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

(typically the company's principal or founder) can later purchase and use as a source of tax-free income – either to borrow against or cash out entirely.  (Id. ¶ 41.)  Participants thereby fully deduct all of their substantial contributions to Sea Nine's VEBAs – and then realize the complete benefit of those contributions later, tax-free, when they leave the VEBA.  (Id. ¶ 44.)

      Sea Nine has consistently defended the legality of the plans and continues to promote them to prospective participants.  (Id. ¶ 120.)  Sea Nine has refused to change the structure of its plans in any meaningful way, even though it has been on notice that its plans do not comply with the Internal Revenue Code.  (Id. ¶ 124.)  As a result, Sea Nine VEBA plan participants consistently understate their true tax liability.  (Id. ¶ 117.)  Sea Nine knows that full deduction of its customers' plan contributions results in an understatement of their tax liability.  (Id. ¶ 118.)

      The IRS audited the tax returns of 41 individuals and/or businesses that participated in a Sea Nine-managed VEBA plan.  (Id. ¶ 101.)  In 36 of the 41 audits, the IRS determined that the participant was liable for additional taxes, because some or all of their contributions did not comply with Section 419A(f)(6).  (*Id.* ¶ 101.)  These customers were assessed a total of $13,874,555 in additional taxes.  (Id. ¶ 101.)  If all companies that the IRS knows are participating in illegal Sea Nine VEBAs are similarly liable for additional taxes, the total amount lost by the Treasury from improperly-claimed plan deductions could exceed $70 million.  (Id. ¶ 102.)

      If Sea Nine is not enjoined, the United States will suffer irreparable harm from the underpayment of tax liability and the exhaustion of resources to enforce the internal revenue laws, and the substantial losses caused by Sea Nine's actions will continue to increase.  (Id. ¶ 104.)  The IRS is harmed because it must dedicate scarce resources to detecting and examining inaccurate returns and to collecting unpaid taxes.  (Id. ¶ 105.)  Sea Nine VEBA plan participants are harmed because they are liable for unpaid taxes, plus interest and penalties resulting from their disallowed deductions.  (Id. ¶ 106.)

      Plaintiff filed this action on October 9, 2013, seeking a permanent injunction.  (Doc. 1.)  On January 16, 2014, Calhoun, Sea Nine's registered agent, was personally served with the Summons and Complaint.  (Doc. 25.)  Sea Nine has failed to plead or otherwise appear in this action.  The Clerk entered default against Sea Nine on February

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                  Date:  September 3, 2014

Title:  United States of America v. Kenneth Elliott et al.

14, 2014.  (Doc. 27.)  Plaintiff twice attempted to personally serve Calhoun with a copy of the Default by Clerk but learned Calhoun had moved.  (Decl. of Mahana Karimi, Doc. 43-1, ¶¶ 10, 16.)  On March 24, 2014, Plaintiff contacted Calhoun to request an address where Calhoun could be served with a copy of the Default by Clerk; Calhoun would not provide one.  (¶¶ 10-13.)  Plaintiff also contacted Calhoun's attorney, who declined to provide Calhoun's address.  (Id. ¶ 14.)

## II.  LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process.  *See* Fed. R. Civ. P. 55; *see also Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Prior to entry of default judgment, there must be an entry of default.  *See* Fed. R. Civ. P. 55.  Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party.  Fed. R. Civ. P. 8(b)(6); *see Geddes*, 559 F.2d at 560.  "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *United States v. Cathcart*, No. C 07-4762 PJH, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010).  "[I]t follows from this that facts . . . not established by the pleadings of the prevailing party, or claims . . . not well-pleaded, are not binding and cannot support the judgment."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit has set forth seven factors to be considered by courts in reviewing a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of plaintiff's substantive claim,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action,
> (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1582-JLS (JPRx)            Date: September 3, 2014
Title: United States of America v. Kenneth Elliott et al.

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright, Arthur R. Miller, & May Kay Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). This is because the allegations of the amount of damages suffered are not necessarily taken as true. *Geddes*, 559 F.2d at 560. Under Ninth Circuit law, a default judgment for money may be entered without a hearing where "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## III. DISCUSSION

### A. Entry of Default

#### a. Plaintiff Has Satisfied Local Rule 55-1

Plaintiff's Application satisfies Local Rule 55-1. Plaintiff accompanied its application for default judgment with a sworn declaration stating that: (1) on May 31, 2013, the Clerk of Court entered default against Sea Nine; (2) Sea Nine is not an infant or incompetent person; and (3) the Service Members Civil Relief Act does not apply. (Decl. of Mahana Karimi, Doc. 43-1, ¶¶ 9, 4, 5.)

#### b. *Eitel* Factors

The Court next evaluates the *Eitel* factors to determine if default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

##### 1. Possibility of Prejudice to the Plaintiff

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Landstar Ranger*, 725 F. Supp. 2d at 920. A plaintiff suffers prejudice when denying default judgment would leave plaintiff without a remedy. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                      Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

Here, Plaintiff notes that for more than six months, Sea Nine has failed to appear or respond to the allegations in this action despite being personally served with the Complaint.  (Mot. 15:23-27.)  Plaintiff further alleges that it has repeatedly attempted to personally serve Sea Nine with the Default by Clerk and that Sea Nine has consciously avoided service.  (Decl. of Mahana Karimi, Doc. 43-1, ¶¶ 10-14.)  The Court agrees with Plaintiff that not entering default judgment could prejudice Plaintiff as it appears unlikely that the Plaintiff will otherwise be able to obtain relief in this matter.

Accordingly, this factor favors entry of default judgment.

### 2.  The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

These two factors look at the Plaintiff's likelihood of success on the merits, requiring that Plaintiff "state a claim upon which the [plaintiff] may recover."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)) (modifications in original).

Plaintiff sufficiently pleads a likelihood of success on its claims based on the detailed allegations set forth in the Complaint.  As discussed further below, these allegations, which are deemed admitted, demonstrate that Sea Nine promotes VEBA plans that violate the Internal Revenue Code.  The Court finds that Plaintiff's claims have merit for purposes of this factor.

Accordingly, this factor favors entry of default judgment.

### 3.  Amount of Money at Issue

Under this factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  Here, Plaintiff seeks only a permanent injunction and asserts that "there is no money at stake in this action, only injunctive relief."  (Mot. 16:21-24.)

Accordingly, this factor favors entry of default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1582-JLS (JPRx)                  Date: September 3, 2014

Title: United States of America v. Kenneth Elliott et al.

### 4. The Possibility of a Dispute Concerning Material Facts

This factor "examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). Where Plaintiffs have filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote. *See, e.g.*, *id*. at 1060-61; *Landstar Ranger*, 725 F. Supp. 2d at 921-22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment."). As discussed above, Plaintiff's Complaint is well-pleaded based on the detailed allegations set forth therein. Moreover, Plaintiff argues that the possibility of a dispute as to material fact is also unlikely because Plaintiff's factual allegations rely on documents created, marketed and administered by Sea Nine. (Mot. 17:9-12.) The Court agrees that this further reduces the likelihood of a material factual dispute.

Accordingly, this factor favors entry of default judgment.

### 5. The Possibility of Excusable Neglect

This factor considers "whether defendant's default may have been the product of excusable neglect." *Landstar Ranger*, 725 F. Supp. 2d at 922. This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Id.* (concluding that this factor favored default judgment and "possibility of excusable neglect is remote" where defendant had been properly served); *Craigslist,* 694 F. Supp. 2d at 1061 ("Plaintiff has proffered evidence showing Defendants were clearly aware of the pending litigation.").

Here, there is little possibility that Sea Nine's default is the product of excusable neglect. Sea Nine was served with the Complaint in this matter and has actively resisted service of the Default by Clerk. (Docs. 6, 18; Decl. of Mahana Karimi, ¶¶ 10-14.)

Accordingly, this factor favors entry of default judgment.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 13-1582-JLS (JPRx) | Date: September 3, 2014 |
| Title: United States of America v. Kenneth Elliott et al. | |

### 6. Policy Favoring Decisions on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist*, 694 F. Supp. 2d at 1061. Although, "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant fails to appear and respond, a decision on the merits is impossible and default judgment is appropriate. *See Craigslist*, 694 F. Supp. 2d at 1061. In this case, Sea Nine has failed to appear and respond.
Accordingly, this factor favors the entry of default judgment.

For the foregoing reasons, the Court finds entry of default judgment against Sea Nine is appropriate in this case.

## IV. Remedies

Plaintiff seeks entry of a permanent injunction against Sea Nine pursuant to I.R.C. § 7408 to prevent future violations of I.R.C. §§ 6700 and 6701.

### A. Permanent Injunction to Prevent Future Violations of Section 6700 of the Internal Revenue Code

The government seeks entry of an injunction against Sea Nine prohibiting further violations of I.R.C. § 6700. To do so, the government must prove: (1) Sea Nine organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) Sea Nine made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) Sea Nine knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct. I.R.C. §§ 6700(a), 7408(b); *United*

8

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 13-1582-JLS (JPRx) | Date: September 3, 2014 |

Title: United States of America v. Kenneth Elliott et al.

*States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000). The government bears the burden of proving each element by a preponderance of the evidence. *Id.* (citations omitted). The traditional requirements for equitable relief need not be satisfied since I.R.C. § 7408 expressly authorizes the issuance of an injunction. *Id.* (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir.), *cert. denied*, 464 U.S. 846 (1983).

       1.     <u>Sea Nine participated in the organization of VEBA plans</u>

Since 2001, Sea Nine has organized and promoted VEBA plans that purport to meet the definition of a "ten or more employer" plan under I.R.C. § 419A(f)(6) but in fact do not. (Compl. ¶ 33.) The Complaint names the Sea Nine personnel responsible for operating its VEBA plans and the precise financial arrangements they employed in doing so. (Id. ¶¶ 33-39.) It identifies the amount of money participating companies would contribute to a Sea Nine VEBA plan and what Sea Nine personnel would do with the excess sums contributed. (Id. ¶¶ 40-43.) It further identifies the Sea Nine personnel responsible for marketing the VEBA plans, details the manner in which they did so through a network of third-party intermediaries, and indicates the types of closely held businesses Sea Nine personnel sought to enlist as customers. (Id. ¶¶ 45-47.) It also identifies by name specific, closely-held businesses that participated in Sea Nine VEBA plans and alleges how they became involved with Sea Nine VEBA plans as well as the significant tax liability they incurred following IRS audits. (Id. ¶¶ 49-57, 58-61, 63-71.)

Accordingly, Plaintiff has established that Sea Nine participated in the organization of VEBA plans.

       2.     <u>Sea Nine made false statements concerning the tax benefits to be derived from participation in its plans</u>

Sea Nine informed VEBA plan participants that the entirety of their contributions to the VEBA plans was tax deductible because the plans qualified as "ten or more employer" plans under I.R.C. § 419A(f)(6). (Id. ¶¶ 59, 68, 72, 93.) However, this was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                    Date:  September 3, 2014

Title:  United States of America v. Kenneth Elliott et al.

inaccurate.

The Internal Revenue Code allows for the deduction of all ordinary and necessary business expenses incurred in carrying on a trade or business.  I.R.C. § 162(a).  It is well established that employee benefits like life insurance are a form of compensation deductible by the employer.  *Neonatology Associates, P.A. v. C.I.R.*, 299 F.3d 221, 228 (3d Cir. 2002).  However, such expenses must be both "ordinary" and "necessary."  I.R.C. § 162(a). Where employer contributions to VEBA plans are far in excess of the amount necessary to pay for annual term life insurance, courts have held that these contributions may actually function as "distributions of surplus cash and not ordinary and necessary business expenses."  *Neonatology Associates*, 299 F.3d at 229 (3d Cir. 2002); *see also Curcio v. C.I.R.*, 689 F.3d 217, 226 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 2826 (2013) (finding employer contributions to a VEBA plan were not ordinary and necessary business expenses where they were "made solely for the personal benefit of petitioners" and functioned as "a mechanism by which [the defendants] could divert company profits, tax-free, to themselves, under the guise of cash-laden insurance policies that were purportedly for the benefit of the businesses, but were actually for petitioners' personal gain."); *De Angelis v. Comm'r*, 574 F.3d 789, 819 (2d Cir. 2009) (affirming *V.R. DeAngelis M.D.P.C. v. Comm'r*, T.C. Memo 2007-360) (concluding payments to purported welfare benefit program were not "ordinary and necessary business expenses under section 162(a)" but rather "distributions to the doctors personally").

As in the above cases, here Sea Nine informed participating companies that they could legally reduce their federal income taxes by deducting their VEBA plan contributions on their companies' tax returns. (Compl. ¶ 41.)  These contributions, however, substantially exceeded the actual cost of the "welfare benefit" claimed to be the benefit of the plans, namely, the death benefit derived from the insurance.  (Id.)  These excess sums were used to fund whole life policies that plan participant beneficiaries could later purchase and use as a source of tax-free income, either by borrowing against it or cashing it out entirely.  (Id.)  Sea Nine's plans thereby permitted participants to accumulate significant wealth while avoiding federal taxes, since participants would deduct their contributions and then receive their contributions tax-free upon leaving the VEBA.  (Id. ¶ 44.)  The price of these whole life policies is usually substantially higher

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                    Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

than if the plan merely purchased term life insurance.  (Id. ¶ 42.)  Therefore, as the above cases make clear, this is not an "ordinary" and "necessary" business expense pursuant to I.R.C. § 162(a).  Rather, participants' VEBA plan contributions functioned as "distributions of surplus cash."  *Neonatology Associates*, 299 F.3d at 229.  Therefore, Sea Nine's statements to plan participants that they could legally deduct the entirety of their contributions to the VEBA plans were false.

Accordingly, Plaintiff has demonstrated that Sea Nine made false statements concerning the tax benefits to be derived from participation in its plans.

> 3. <u>Sea Nine knew and had reason to know that the statements were false or fraudulent</u>

As the above case law indicates, Sea Nine had reason to know its representations to participants were false at least as of 2002 when the Third Circuit issued its decision in *Neonatology Associates*.  299 F.3d at 221.[3]

Moreover, the admitted facts show that Sea Nine had actual notice that these representations were false.  In September 2003, the IRS enacted new regulations governing "ten or more employer" plans.  *See* 26 C.F.R. § 1.419A(f)(6)–1.  The regulations specifically prohibited such plans from maintaining an "experience-rating" arrangement with any employer.  26 C.F.R. § 1.419A(f)(6)–1(a)(iii).[4]  The admitted facts, however, demonstrate that Sea Nine's VEBA plans are experience-rated as to participants, that it knew its plans did not comply with the new regulations, and that it took no action to modify its plans' operation to comply with these regulations.  (Compl. ¶ 77, 78, 86, 90, 99.)  In light of these concerns, AIG (which had sold many insurance policies to Sea Nine for its VEBAs) asked Elliott to provide it with a legal opinion that

---

[3]  The underlying Tax Court decision identifies Sea Nine as the administrator of the VEBA plans in *Neonatology*.  115 T.C. 43, 49 n.9 (U.S.T.C. 2000).

[4]  Experience rating occurs where a plan maintains, formally or informally, separate accounting for each employer and the employers have reason to expect that, at least for the most part, their contributions will benefit only their own employees.  26 C.F.R. § 1.419A(f)(6)–1(b); *see also* IRS Notice 1995-34 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                                    Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

Sea Nine's VEBA plans complied with the new regulations.  (Compl. ¶ 80.)  Elliott admitted that counsel had provided him with several opinion letters stating that its plans did not comply with the new regulations.  (Id.)  The opinion letters informed Elliott that the regulations took effect in January 2003, and that therefore the VEBA plans were in violation of them.  (Id.)  Elliott nevertheless continued to inform third parties that the VEBA plans complied with the law.  (Id.)  For instance, in 2007 and 2008, he stated in correspondence with a potential customer that "we have been operating and administering the Plan in compliance with the Final Regs."  (Id. ¶ 82.)   When other financial institutions began demanding audits to determine if the plans they held were in compliance with the regulations, Elliott acknowledged that the VEBAs were not in compliance with the regulations but claimed they were being "operated" in accordance with changes in the law.  (Id. ¶ 84.)   Elliott has also admitted, in sworn testimony in a lawsuit brought by former participants, that VEBA plan participants were never told about the need to change the plans' terms after the adoption of the regulations and that they were never asked to sign any new plan documents.  (Id. ¶ 87.)

Accordingly, Plaintiff has demonstrated that Sea Nine knew and had reason to know that the statements were false or fraudulent.

4. The false or fraudulent statements pertained to a material matter;

If a statement produces a substantial tax benefit to a taxpayer, the matter is properly regarded as "material" within the meaning of I.R.C. § 6700.  See *United States v. Buttorff*, 761 F.2d 1056, 1062 (5th Cir. 1985).

Here, all of the alleged statements pertain to the availability of tax deductions for plan participants.  These deductions gave a substantial benefit to taxpayers; for instance, the 41 audits of Sea Nine VEBA plan participants conducted so far reveals underpayment in the amount of $13,874,555.  (*Id.* ¶ 101.)

Accordingly, Sea Nine's statements were "material" under I.R.C. § 6700.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                  Date:  September 3, 2014

Title:  United States of America v. Kenneth Elliott et al.

        5.      <u>An injunction is necessary to prevent recurrence of this conduct.</u>

In determining the likelihood of future violations and, thus, the need for an injunction, Courts consider: (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated. *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1105 (9th Cir. 2000).  The Court finds these factors support the imposition of injunctive relief.

First, the gravity of harm caused by Sea Nine is severe.  At least 200 employers have participated in a Sea Nine VEBA plan.  (Compl. ¶ 100.)  As of August 2013, the IRS had audited 41 participants and found liability for additional taxes in 36 cases totaling $13,874,555.  (Id. ¶ 101.) If all participants the IRS was aware of at the time of the Complaint's filing were similarly liable, the amount lost by the Treasury could exceed $70 million.  (Id. ¶ 102.)  This represents significant harm to companies that detrimentally rely on the false representations by Elliott and other Sea Nine personnel about the deductibility of plan contributions.  (Id. ¶ 106.)  In addition, it harms the Internal Revenue Service, which must dedicate resources to detecting and examining inaccurate tax returns filed by participants.  (Id. ¶ 105.)  Accordingly, this factor weighs in favor of injunctive relief.

Second, Sea Nine's participation in the misconduct at issue is significant.  Sea Nine has been intimately involved in the organization and operation of the Sea Nine VEBA plans for 15 years.  (*Id.* ¶ 111.)  During that time it has overseen the plans' evolution and directly and indirectly promoted the VEBA plan scheme to prospective participants through its own agents as well as third parties.  (*Id.* ¶¶ 111, 113.)  This factor weighs in favor of injunctive relief.

Third, Sea Nine knew its conduct was wrongful.  As described in Section IV(A)(3), Sea Nine has been aware since at least 2003 that its VEBA plans were in violation of the Internal Revenue Code, causing participants to wrongfully claim deductions to their federal income taxes.  However, despite this knowledge, Sea Nine and

13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1582-JLS (JPRx)                           Date:  September 3, 2014
Title:  United States of America v. Kenneth Elliott et al.

its agents have continued to represent to current and potential customers that their VEBA plans are in compliance with the law.  (Compl. ¶¶ 80, 82, 84.)  Accordingly, this factor weighs in favor of injunctive relief.

Fourth, the infractions in this case are not isolated incidents but are part of a systematic, recurring scheme operated by Sea Nine for more than 10 years.  Accordingly, this factor weighs in favor of injunctive relief.

Fifth, Sea Nine refuses to recognize its own culpability and persists in the wrongful conduct.  As described above, Sea Nine has been on notice since at least 2003 as to the illegality of its VEBA plans.  Despite this, Sea Nine continues to operate non-compliant VEBA plans and represent to prospective customers that its plans comply with internal revenue laws.  (*Id.* ¶¶ 74, 80.)  This factor weighs in favor of injunctive relief.

Finally, there is a serious risk of similar conduct by Sea Nine in the future.  As noted herein, it continues to promote participation in its non-compliant VEBA plans and to seek out new customers despite knowledge of its culpability and of this case's prosecution.  This factor therefore weighs in favor of injunctive relief.

Because all factors suggest that Sea Nine is likely to continue to violate 27 U.S.C. § 6700 unless injunctive relief is awarded, the Court finds injunctive relief is appropriate.

**B.    Permanent Injunction to Prevent Future Violations of
         I.R.C. § 6701 Pursuant to I.R.C. § 7408**

The government next seeks entry of an injunction against Sea Nine prohibiting further violations of I.R.C. § 6701.  To do so, the government must prove: (1) Sea Nine aided or assisted in, procured, or advised with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document; (2) Sea Nine knew or had reason to believe that it would be used in connection with a material matter arising under internal revenue laws; (3) Sea Nine knew that such portion would result in an understatement of tax liability of another person; and (4) an injunction is necessary to prevent recurrence of this conduct.  I.R.C. §§ 6701(a), 7408(b).  The government bears the burden of proving each element by a preponderance of the evidence.  *Estate Pres. Servs.*, 202 F.3d at 1098.  Here, too, the traditional requirements for equitable relief need

14

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  SACV 13-1582-JLS (JPRx) | Date:  September 3, 2014 |
| Title:  United States of America v. Kenneth Elliott et al. | |

not be satisfied since I.R.C. § 7408 expressly authorizes the issuance of an injunction.  *Id.* (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir.), *cert. denied*, 464 U.S. 846 (1983).

> 1. <u>Sea Nine advised with respect to the preparation of tax returns</u>

As discussed in Section IV(A)(1), Sea Nine actively promoted its plans on the basis that customers could properly deduct the entirety of their contributions.  (Compl. ¶¶ 41, 59, 68,72, 116.)  By doing so, Sea Nine inherently advised its customers as to the preparation of their tax returns, since customers' representations in their tax returns about the deductibility of their contributions to Sea Nine's VEBA plans were based on Sea Nine's advice.  Accordingly, Plaintiff has demonstrated that Sea Nine advised with respect to the preparation of tax returns.

> 2. <u>Sea Nine knew or had reason to know its advice would be used in connection with a material matter arising under internal revenue laws;</u>

The admitted facts demonstrate that Sea Nine knew customers relied on its advice as to the deductibility of their contributions in preparing their tax returns.  (*Id.* ¶ 118.) Moreover, Sea Nine should have known that they would do so, because these plans existed primarily to facilitate customers' deductions. Sea Nine's advice was material because it had a substantial tax benefit to the taxpayer.  *Buttorff*, 761 F.2d at 1062. Accordingly, Plaintiff has demonstrated that Sea Nine knew or had reason to know its advice would be used in connection with a material matter arising under internal revenue laws.

> 3. <u>Sea Nine knew that its advice would result in the understatement of tax liability of another person</u>

For the reasons described in Section IV(A)(3), Sea Nine knew or had reason to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1582-JLS (JPRx)             Date: September 3, 2014

Title: United States of America v. Kenneth Elliott et al.

know that its statements to customers about the deductibility of their VEBA plan contributions were false. Moreover, as discussed above, Sea Nine knew that these representations would cause customers to rely on them in claiming deductions on their tax returns to which they were not legally entitled. Accordingly, Plaintiff has demonstrated that Sea Nine knew or had reason to know its advice would be used in connection with a material matter arising under internal revenue laws.

            <u>4.</u>       <u>An injunction is necessary to prevent recurrence of this conduct</u>

For the reasons discussed in Section IV(A)(5), the Court finds injunctive relief is necessary to prevent further violations of I.R.C. § 6701 by Sea Nine.

**V. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Default Judgment of Permanent Injunction is GRANTED.

                                                                               Initials of Preparer: tg